Thank you. May it please the Court, Counsel, before I start, I'd like to reserve two minutes for rebuttal. All right. Do you see the clock down there? I do. Okay, good. Thank you. My name is Thomas Beko. I represent the plaintiff appellant in this case, Mr. Guy Grimsley. This appeal presents essentially four issues that I think are really pretty straightforward and to date have not, at least some of them, never been determined in the Ninth Circuit. I think the most important issue that the case presents is a question of whether or not a counterclaim that is filed in litigation can be deemed to be retaliatory conduct under Title VII or the ADEA. There's also some related questions about whether or not the retaliation claim in this case should be barred because they were not asserted in the original action, when in fact we attempted to file them in the original action and the Court refused to allow us to do that. Could I just ask you before we proceed one point on that, even if the court was correct here, the district court, in not letting this proceed as a second action, you've preserved that through the appeal of the first action, correct? And I understand that an appeal was just filed. So why wouldn't that also be an issue there? Because those retaliation claims are not part of the original action. You're not appealing the fact that he wouldn't let you – did they not let you add those to the original action? That was not part of our appeal. Our appeal was only of the underlying substantive issues. We felt that. Why didn't you appeal also the fact that you weren't permitted to join? I mean, that seems to me the appropriate forum for deciding that issue. Well, I'm not so certain that it's the appropriate forum because I think we attempted at that point in time, and I think until the issues in this case get resolved, it's not even right to determine whether that denial was appropriate, because substantively, if a counterclaim cannot, under any circumstances, be deemed to be retaliatory before this Court in this case, I think it makes it kind of superfluous to try to appeal it in that one. I've got to say I don't understand that. I mean, ordinarily, you get to a final judgment, everything that's happened in the case is appealable. And that would logically include a denial of a motion to amend a complaint. I mean, we get that frequently in appeals. This happens to be the unusual case where a second lawsuit has been filed, and so you've launched another appeal. But ordinarily, it all comes together in one. So now that we have one appeal, why isn't that the appropriate place to deal with it? I don't know that it's an inappropriate place, and we can certainly do that. Our time for appeal has not yet expired. We can amend and assert that again and raise that issue in that appeal as well. It just seems that this is an issue that is head on in this case, and we certainly can't do that. Are you conceding then that Judge Hicks was appropriately declined to allow you to amend the complaint in Grimsley 1? Probably, because of the fact that the denial of the motion to amend was on two grounds. One, because supposedly it wasn't timely, because we filed an amended complaint rather than filing a motion to amend the complaint. And secondly, because we had not exhausted the administrative requirements to assert that retaliation claim, because it had never been presented to the Equal Rights Committee. Well, it looks to me like you had a couple of options at that point. One, since you hadn't exhausted it, you could have asked the district court to sort of hold the proceedings while you went and un-exhausted it so that you could combine everything. Second thing that you could have done is once you did get it exhausted, you could have come back and tried to amend the complaint again. And I guess maybe a third thing to do would have been to file your suit and then see if you could consolidate the two suits. Well, we certainly would have. And we figured that's exactly what would have happened, is that the Court would have consolidated them. The first thing that we were hit with was the motion to dismiss, and so we dealt with that. Obviously, if we had gotten by the motion to dismiss, we would have asked the court to consolidate it. We didn't want to try this case twice. Well, the fourth option would be then to say, having exhausted all those three options or taking the position that it really didn't need to be re-exhausted because it was really part and parcel of the larger claim, appealing the decision not to let you bring that claim, but doing it in the suit where it actually happened. And again, I mean, we can do that and restart this process over again. It didn't seem wise at the time to go and, you know, sit there and do nothing with that because of the district court's decision. We had to go forward and exhaust our administrative remedies. One way or another, once that administrative process was complete and we got a right to sue that, or we had to do something within 90 days, either, I guess, go back and ask the court a second time to allow us to amend our complaint, or, you know, my concern was, is that we only had 90 days, and there's no guarantee that we would have ever gotten a decision within that 90-day period about whether or not the court was going to allow us to amend. We couldn't let that time frame run. I don't think any court would have said that a motion for leave to amend to assert the claim would have told our filing deadline of only 90 days after we got that right to sue letter. I just felt we had no choice but to get a second suit on file because we had such a short limitations period. Within 90 days, we had to get that thing on file. And we're going now to the where I think you were going, and, of course, we interrupted you because it's an unusual procedural case. I think you make a very interesting argument about the counterclaim, one that we haven't yet decided, and I don't know the answer necessarily yet, but let me just ask you, let's assume that there is a narrow window where you could make such a counterclaim. Here, the determination was also made that it wouldn't succeed. Well, the Court ruled as a matter of law that a counterclaim could never be retaliatory. And I think that's the question. My question is, since we can affirm on any ground, why would you have to say that it was absolutely baseless? I mean, it seems to me, even as pled, it isn't absolutely baseless. Well, I think it is absolutely. The other circuits that have held that it's permissible is if the action, if the counterclaim is filed with a retaliatory mode and it's baseless in law or fact, then it can be deemed to be a retaliatory act. In this case, there was a lawsuit that was filed. There were two claims. One was for conversion for property that had been returned over a year prior to the time when that counterclaim got filed. All that property had been returned within a matter of two weeks after my client received an original severance package that gave him 21 days to review it. I understand that argument. Let me just ask you, though. I think, oddly enough, the law suggests that even if you've – something's been converted for a short time, you still have a conversion claim, even though they give it back to you. Now, you may have not very many damages, but isn't under the law, don't you have to have a claim? Well, if in fact he had not been given 21 days to consider their offer, he returned that. But the – but he – his – whether he accepts the offer or not does not determine whether or not he has to return the computer. He's not going back to work there. Well, they – That was the only question was whether he was going to accept their offer at that point. Well, they were discussing other solutions, such as him resigning and changing positions, doing all those things in exchange. But none of that affects his duty to return the computer. He's not going back to work there. That's the one thing that is clear. I don't know that that was clear. And that's what – they were – there were ongoing discussions about what was really going to happen to him. When they finally came back and said, we're taking our offers off the table – this was on October 17th – we're taking our offers off the table, return the property, they returned it that day. And then they – for a year, they sat on that. They did nothing with that. And then the only time that the issue comes up that these – he's converted this property is when he files his suit. They also filed this claim for return of $15,000 in moving expenses that they had never asked for at one time. Not one time before they filed that counterclaim did they ever ask for the return of that money. But it's not a – you've been through litigation enough that you understand that once a lawsuit is filed, the defendant is going to assert whatever claims they've got to mitigate whatever damages you may collect. This is not unusual. Did you limit your compromise – your lawsuit to the position that might have been discussed as a compromise in the prior discussions? I'm sorry. I didn't know that. Well, you took a position in the lawsuit. Did you limit the damages asserted in the lawsuit to the position your client might have been willing to compromise if those talks had worked out? And if the answer to that question is no, and I'm certain that it is, why is it we have to expect the other side? The fact that they didn't assert a claim in the compromise discussion, why does that compromise? They definitely have to do that. But if the only reason that they're asserting those claims is to essentially chill him or punish him for having made these claims in the first instance, why would that not be retaliation? Well, what is your client's injury in this case? He'd already been terminated. He wasn't working there anymore. I fail to see what his injury is. Well, I mean, any time that you're retaliated and chilled from pursuing your legal right to claim, that's a violation. If it was a year before, when the counterclaim was filed, from the counterclaim, what injury has your client suffered? My client suffered the injury in that it made it very difficult for him to go forward and continue with the litigation. And now he faces all of these lawsuits. Well, that's litigation. I mean, you could say that as to every counterclaim. You could say that as to every claim. They could claim that, well, you sued them, so it made it difficult for us to discuss a settlement. Is that a cause of action, wrongful litigation? I think if it's retaliatory, it is. We used up all your time. I'm going to give you a minute for rebuttal. Good morning. Paul Tremmer of Jackson Lewis on behalf of the Eppley Charles River Laboratories. With all due respect to the Appellant's counsel, there's really only one issue, two issues before the Court, and he's mischaracterized one of them. Which is the one that was most of the discussion was concentrated on, which is whether a, not whether a counterclaim can be retaliatory, but whether a compulsory counterclaim can be retaliatory. And as set forth in the briefs, there's a substantive difference between asserting and refusing to waive a compulsory counterclaim. And launching a non-compulsory counterclaim, a permissive counterclaim that could result in collateral litigation that has nothing to do with the employee's determination or the issues being litigated in the suit. Suppose a allegedly compulsory counterclaim is entirely fanciful. The facts alleged in the counterclaim are entirely false and the party making the allegation knows it. But they allege facts that would constitute a compulsory as opposed to a permissive counterclaim. Why should that be excused? Well, it wouldn't be, but it wouldn't. Well, then, as soon as you say wouldn't be, can you have a flat rule that says compulsory counterclaims are automatically immune? Well, yes, and it wouldn't be because there's existing procedures for dealing with sham pleadings and wrongful litigation conduct. The plaintiff could make a motion under Rule 11 and address it that way. If the lawsuit, if the counterclaims proved to be a sham, at the end he could initiate malicious prosecution litigation. There's existing procedures within the Federal Rules of Civil Procedure to address issues like this. It doesn't require the non-retaliation provisions of Title VII and the ADEA to be interpreted in a way that would effectively nullify defendant's rights to assert compulsory counterclaims. But you see, it's only compulsory because it arises out of, correct? Correct. I mean, it becomes the compulsory counterclaim because of its origin. So it, you know, it certainly happens, for example, in sham litigation counterclaims in the antitrust intellectual property arena, where just because you, quote, have a compulsory counterclaim because it arises out of the same factual predicate, it still could be a sham counterclaim. And I don't see why that would be any different in the Title VII arena. Your argument doesn't really make sense to me. If, in fact, your counterclaim, mandatory or otherwise, is a sham or is retaliatory. Well, again, there's existing procedures for dealing with a sham counterclaim. We don't have the Title VII and the ADEA non-retaliation provisions don't need to be interpreted in a way to handle that. They can be handled under existing Federal Rules of Civil Procedure and the Court's inherent authority. And with all due respect, that's probably the best way that they would be handled. Judges with experience could exercise their discretion and manage their dockets and deal with sham litigation. The second issue, and something that was pointed out in the first part of the argument, is that under Burlington Northern, only an actual harm, an actual injury, constitutes retaliation under Title VII or the ADEA. And it can't be the case that any reasonable employee would be dissuaded from pursuing litigation by a compulsory counterclaim. The administrative process has been exhausted. Litigation has begun. Discovery about the same transactions or occurrences that are at issue in the primary litigation wouldn't be burdensome on the employee. There's no actual harm suffered by the initiation of compulsory, of a compulsory  Ginsburg-Massey, if in the employee context, if you initiated, he sues you in the Title VII context, and you initiate a compulsory counterclaim that relates to theft of trade secret, but you know it's just flat wrong. It's made up. It never happened. He never had access to that material. Everybody knew that. Why wouldn't that, but you're basically doing it in retaliation because you're trying to dissuade him from proceeding with this suit. Why wouldn't that be a retaliatory counterclaim? Well, if, first of all, attorneys knowingly asserting an officer, our officers of the court, they wouldn't know, presumably they wouldn't know. Right, but that would go after you or someone else. That would go after the attorney under Rule 11. Right. And there's, the party sanctions are available under both, under the court's inherent authority. There are ways to handle that without expanding the non-retaliation provisions of the statutes. But why would it be retaliating if the actual injury is that he now has a lawsuit against him? Has to report it, for example, depending on what kind of profession or whatever. Might have to report the existence of a claim against him. Might have other consequences. Has to get an attorney. I mean, you can deal with it under 1926 and other things, but if it's retaliatory, I'm not sure why it wouldn't fall under the rubric of Title VII. Well, Bill Johnson's, which is a retaliation case under the NLRA, which is similar and it's used as, it's cited as authority in Title VII retaliation cases, but there's, it is slightly different. It talks about completely collateral litigation and the standard that it employs is whether it's a complete sham. This is not collateral litigation. This is a compulsory counterclaim. And because Bill Johnson's also talks about balancing the right of defendants to petition the courts for adjustment of their grievances to file a lawsuit, a statute that doesn't speak to this issue shouldn't be interpreted in a way that would substantively limit that right. Defendants would be put in a real dilemma if every time they had to answer an employment lawsuit, whether it be a completely baseless plaintiff lawsuit that could be easily dealt with by a motion to dismiss or something like that, if they had to decide whether to assert their compulsory counterclaims and effectively buy a new retaliation lawsuit. That would be the case. Remind me, in addition to saying that as a matter of law, this would be an inappropriate type of action, did you also say that it would also fail as a matter of law? The retaliation claim? Yes. We did say it would fail as a matter of law because it would not be an actual harm under Burlington Northern and also because the pleadings in this case established that our counterclaims are not a sham. I can address that. I'm just – just on the theory, we always have to explore, not saying we would affirm the district court, but if we were, we wouldn't necessarily have to affirm on the ground that the district court decided to land on. Well, as the Court is aware, our compulsory counterclaims arise out of the contract that the plaintiff is suing on, both for the breach of contract claim and the conversion claim involves property as well as confidential documents and electronic data that wasn't returned. That obligation is also contained and set forth in the same contract that the plaintiff is suing under. If you look at – the contract is at page 160 of the record, and then if you look at our allegations in the original counterclaim, which is 155 and 157, and the plaintiff's answer to those counterclaims at 164 and 166 of the record, it shows that the plaintiff essentially admitted that he breached the contract. Now, he denies that he's liable for that because one of the issues in the primary litigation is whether that contract contained oral modifications relating to the termination provision. But he's conceded that he's bound by a contract, that that contract set forth a repayment obligation, and that he hasn't paid the money back. That's certainly sufficient to show that our counterclaim is not a sham. With respect to the counterclaim for conversion, he's admitted that he improperly retained the property. He's admitted that a demand was made. And not only did he not return the computer for a – several weeks, he has retained confidential documents and attempted to use those confidential documents and exploit them in the primary litigation. Again, whether there's been damages, whether actual conversion has taken place is a matter that could be resolved by the court after discovery, but it's certainly not a sham. There's a valid reason for asserting these counterclaims. And this is a good case because, to think about this, the value of the claims being asserted by the defendant are relatively low. The exposure is not extraordinary. This isn't a million-dollar repayment obligation. This isn't a case where the secret recipe for Coca-Cola has been taken. And if plaintiffs or defendants are forced to decide whether to assert relatively low-value counterclaims or waive them out of the fear of retaliation lawsuit, it would be a bad interpretation of the nonretaliation provisions of the statutes. Thank you. Thanks. If you want, I'll give you a minute for rebuttal, since you've expired your time. A couple of obviously very brief points. This counterclaim, as far as the breach of contract is concerned, it is true that there were two allegations in the counterclaim. One, did you sign this document? Yes. Two, did you return the property? No. What that totally omits is the fact that there wasn't an oral modification to the offer that was made. It was in writing from them. After the original offer was made, my client made inquiry. They sent him back e-mails where they modified that repayment to include a, it was only returnable if he was terminated for just cause. And they admit he was not, that they did not have just cause to terminate him. So we didn't admit anything in our pleading that their breach of contract claim was valid. The contract, the document that they produced, my client admitted he signed it, but that document had been modified by writing by them before he signed it. So there was obviously no breach of the contract that was shown by the pleadings. Secondly, as far as the damage is concerned, in this idea that, okay, Rule 11 will take care of all these problems, they never brought any Rule 11 claim against us. They sought this, they challenged this right on the merits, and the Court ruled it on that. I think the point was that you could bring a Rule 11 claim against them for having brought a sham counterclaim. If it's utterly baseless, then you can seek Rule 11 sanctions against them. Well, no. They brought the counterclaim against my client. Right. But if you think it's a sham, then you may have a Rule 11 remedy against them. But if it's retaliatory, retaliatory, I mean, even if my client is only allotted $1 in nominal damage. But retaliation is a completely different theory, but you may have a way of getting rid of the counterclaim by arguing that the attorneys for the laboratory have violated their obligations under Rule 11. My client would be entitled to even if nothing more than $1 in nominal damage. He would be entitled to just that. Why? If in fact a retaliatory action was brought against him and violated his obligation. And you suffered no injury as a result? He would suffer injury in the sense of general damage that would always go along with the retaliation. Why? I fail to see any injury he suffered as a result of this. He launched the litigation. He wasn't working there anymore. They didn't withdraw their offer because of the counterclaim. The counterclaim came a year after he left employment. What's the retaliation? What's the injury? The retaliation, the injury that this Court has frequently said is if you not only dissuade that person, but if you dissuade others from pursuing their rights, the fact maybe that Mr. Grimsley is not going to be dissuaded because he's already commenced is, it very well could dissuade many other people who would otherwise want to pursue their rights, and they would be dissuaded from it because they know if we pursue this, we're going to get hit with a bunch of these counterclaims, totally retaliatory in nature, and we're going to have to face all of those. That's the evil that retaliation was designed to prevent. And I think, as you stated, once they say that if those claims were brought with a wrongful motive and without base, that should end this inquiry right there. Thank you. Thank you. I thank both counsel for your argument this morning. The case of Grimsley v. Charles Ripper is submitted.
judges: McKeown, Clifton, Bybee